UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT NJOS,                          :
                                     :
        Plaintiff                    :
                                     :
    v.                               :   CIVIL NO. 3:CV-12-1252
                                     :
THOMAS R. KANE, et al.,              :   (Judge Kosik)
                                     :
        Defendants                   :

**MEMORANDUM**

Plaintiff, Scott Njos, an inmate confined at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, filed this as a Bivens action on June 27, 2012.[1]  The only remaining claims are a negligence claim for failure to fix structural defects at the prison, and an ordinary negligence claim for a delay in medical care against the United States of America pursuant to the Federal Tort Claims Act ("FTCA").  Pending on the docket are several motions filed by Plaintiff that will be addressed herein.

**I.     Background and Procedural History**

Plaintiff was confined at USP-Lewisburg at the time of the alleged incidents.  On August 23, 2011, an earthquake occurred.  Its epicenter was centered on the middle of the Eastern seaboard, in Louisa County, Virginia.  Plaintiff alleges that on the day of the

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  This matter was initially assigned to a Magistrate Judge for the handling of all pretrial matters.  As of October 16, 2014, the case was reassigned and now proceeds exclusively before the undersigned.

earthquake, his cell at USP-Lewisburg began to shake violently.  (Doc. 1, p. 2.)  After a few seconds, cracks began to develop in the cell's ceiling, which subsequently widened.  (Doc. 18, ¶ 6.)  Plaintiff claims that he advised the range officers on duty that his cell walls and ceiling had cracked during the quake.  The officers were indifferent to Plaintiff's concerns.  Plaintiff continued to contact guards to advise of the alleged cracks, but no maintenance was performed on his cell walls to repair the cracks.  (Doc. 18, ¶ 9.)  It is disputed as to whether Plaintiff reported the structural defects to the guards before August 28, 2011.  Defendant avers that Plaintiff never made these assertions to staff and that the cracks were discovered on a routine check on August 28, 2011.  (Doc. 29, ¶ 2; Doc. 41, p. 3).

On August 28, 2011, Plaintiff states that he was standing on the toilet in his cell and cleaning the upper walls of the cell, all while resting his hand on the cell grate for support.  He then maintains that the "cell wall caved in were (sic) the earthquake had left cracks in the wall."  (Doc. 1, p. 2).  Plaintiff states that the bricks surrounding the grate then suddenly caved in, causing him to fall off of the toilet and injure his knee.  (Doc. 18, ¶ 11.)  On October 21, 2011, Plaintiff was examined by Physician Assistant Kenneth Zook.  Plaintiff informed Zook that he had a fall in his cell on August 28, 2011, while holding on to the ventilation grate in the wall.  (Doc. 1, Ex. C., p. 1).  During that medical examination, Plaintiff stated that the injuries to his back sustained during the fall were no longer painful, though Plaintiff noted that his knee had not yet healed.  It is disputed as to when Plaintiff first reported the pain in his knee.  Plaintiff states that as early as August 30, 2011, he informed Zook about the pain in his knee, but that this went undocumented.  Defendant asserts that Plaintiff never mentioned that his knee was injured until September 30, 2011.  (Doc. 29, ¶¶

2

3-4.)

Plaintiff filed an amended complaint on April 29, 2013, in which he alleges claims of negligence and failure to use reasonable care. (Doc. 18.) On June 6, 2013, the court dismissed with prejudice all defendants named in this case, and added the United States of America as a defendant. (Doc. 20.) The court directed that Plaintiff be allowed to proceed with respect to his negligence claim and his medical malpractice claim against the United States under the FTCA. (Doc. 20, p. 3.)

Service of the amended complaint was thereafter directed, and Defendant filed a motion to dismiss and for summary judgment. Plaintiff submitted a cross-motion for summary judgment. On May 15, 2014, the court adopted the Report and Recommendation of the Magistrate Judge recommending, in pertinent part, that (1) Defendant's motion to dismiss be denied and that Plaintiff be permitted to proceed on his claims of negligence regarding structural defects and delay in medical treatment, and (2) Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment be denied without prejudice to the filing of subsequent motions for summary judgment after the completion of discovery.[2] In so finding, the court agreed with the Magistrate Judge that questions of fact existed as to

---

[2] The Magistrate Judge addressed Defendant's motion to dismiss Plaintiff's medical malpractice claim on the basis that Plaintiff failed to file a Certificate of Merit, as required by Pennsylvania law. In response to Defendant's argument, Plaintiff asserted that a Certificate of Merit was not necessary in that he is bringing an ordinary negligence claim against the United States for failure to examine his injury. As such, he abandoned any form of medical malpractice claim and asserted he only alleges an ordinary negligence claim for delay in receiving a medical examination. (Doc. 47 at 7-10.) In analyzing this issue pursuant to Defendant's motion to dismiss, the Magistrate Judge found that Plaintiff stated a claim of ordinary negligence sufficient to survive Defendant's Rule 12(b)(6) motion. Defendant did not move for summary judgment with respect to said claim.

whether prison employees failed to fix the cracks in the wall following the earthquake, despite knowing of the problem. Additionally, there is a question of fact as to whether there is comparative fault by Plaintiff. Plaintiff repeatedly asserts that he informed the staff of the cracks in the wall, whereas Defendant asserts that the damage to the cell was not discovered until a routine search was conducted by the range officer on August 28, 2011. (Doc. 47 at 12-13.) Viewing the record in the light most favorable to the non-movant, the court found any consideration of summary judgment to be premature in light of the existing issues of material fact warranting discovery.

Pending on the docket are a number of motions filed by Plaintiff in this action. On March 18, 2014, he filed a "Motion for Increased Amount of Damages Pursuant to 28 U.S.C. § 2675(b). (Doc. 40.) Related to this filing are Plaintiff's motion to supplement his brief in support of said motion (Doc. 68), and his motion for the court to rule on his outstanding motion to increase the amount of damages sought (Doc. 76). Also pending are Plaintiff's motion for leave to depose Defendant Zook (Doc. 58), motion to compel the Clerk's Office to issue a subpoena in camera pursuant to Fed. R. Civ. P. 45(a)(3), motion for the court to infer facts pursuant to Fed. R. Evid. 301 (Doc. 67), and motion to compel the Office of Inspector General to produce a document (Doc. 73).

**II.   Discussion**

    **A.   Motion to Increase Damages/Related motions**

Title 28 U.S.C. § 2675(b) of the Federal Tort Claims Act provides as follows:

(b)    Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly

4

> discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b).

In his administrative tort claim filed on March 1, 2012, Plaintiff sought damages in the amount of $5,000.00. (Doc. 68, Attach. A, Form 95 Claim for Damage, Injury, or Death.) He has filed a motion seeking to increase his requested damages to $20,000.00. In support of his request, Plaintiff claims that when he filed his administrative tort claim, he was newly injured and had not yet discovered by MRI the extent of the damage he sustained to his knee, and did not know he would require surgery. He states that the MRI was conducted in the Summer of 2012, and he was approved for surgery in the Fall of 2012. Surgery was performed March 1, 2013. He claims that he was initially informed by prison medical personnel that his x-rays came up negative for malformations or other injuries, and that he merely had a strain or muscle pull. He was provided Motrin to take for the pain, as well as an injection every three (3) months. He was not provided with an Ace bandage or knee brace. He was not aware until after being informed by Dr. Ball that even if his pain and disability lessened, they would never go away.

Approximately four (4) months later, Plaintiff sought leave to file a supplemental brief in support of his motion to increase damages. (Doc. 68.) In his brief, he sets forth more details and attaches exhibits in support of his arguments. He also asserts additional facts he claims support a further increase in the amount of damages to $50,000.00. Also pending is Plaintiff's motion requesting that the court adjudicate his requests to increase damages. (Doc. 76.) He contends that any delay in ruling on his motion interferes with his ability to

5

negotiate a settlement with Defendant.

Before filing an action in federal court pursuant to the FTCA, the plaintiff must first have presented the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). The subsequent federal case "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." Id. § 2675(b). While there is a split among the Circuits over precisely what constitutes "newly discovered evidence" or "intervening facts," the courts have uniformly placed the burden of proving either occurrence on the FTCA claimant. See Allgeier v. United States, 909 F.2d 869, 877 (6th Cir. 1990); Kielwien v. United States, 540 F.2d 676, 680 (4th Cir. 1976), cert. denied, 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976).

While it does not appear that the Third Circuit has yet ruled on the approach it will adopt, precedent reveals basically two divergent lines of authority with respect to modification of a claim for damages under the FTCA.[3] In the approach taken by the Eleventh Circuit, and which has been followed by the Fourth, Sixth and D.C. Circuit Courts, a claim may be increased when the claimant either did not know or reasonably could not have known the severity of the injury at the time the FTCA tort claim notice was filed. See Cole v. United States, 861 F.2d 1261 (11th Cir. 1988); Husovsky v. United States, 590 F.2d 944

---

[3] Some circuits have not ruled on a specific approach, while others, such as the Eighth Circuit, have indicated its approach is more in conformity with the Eleventh Circuit. See McMichael v. United States, 856 F.2d 1026 (8th Cir. 1988).

(D.C. Cir. 1978); Spivey v. United States, 912 F.2d 80 (4th Cir. 1990).  In the second line of cases, the courts strictly construe the requirements of 28 U.S.C. § 2675(b).  This approach has been adopted by the First Circuit Court of Appeals, and is illustrated in Reilly v. United States, 863 F.2d 149 (1st Cir. 1988).  Under this second approach, a claimant may not amend his or her claim for higher damages unless the claimant has new information which was not reasonably discoverable at the time the FTCA tort claim notice was filed, and such information does not go to the severity of the claimant's known injuries.

Under the facts of the instant case, the court is more persuaded by the approach adopted by the Eleventh Circuit requiring a showing by Plaintiff that his prognosis and future disability could not have been discovered prior to the filing of the administrative claim.  At the time Plaintiff filed his administrative claim on March 1, 2012, he was told that his knee injuries would heal on their own, and that he only required Motrin and occasional injections.  He was thus under the impression that his injury was temporary, and submitted his tort claim damage request based thereon.  It was not until after submission of the claim that he was seen by Dr. Ball, an MRI ordered and surgery required and performed. (Doc. 68, Exs. D, E and F.)

In his motion for damages, Plaintiff seeks to increase the amount of damages from the $5,000.00 requested in his administrative tort claim, to $20,000.00 based upon the foregoing information, not known to him or reasonably discoverable when he filed his claim.  He thereafter moves to supplement his motion with exhibits, as well as increase his requested damages to $50,000.00.  The only explanation provided in requesting an increase from $20,000.00 to $50,000.00 is Plaintiff's contention that after surgery in March 2013, and as early as March 2014, " . . . previous weakness, pain, pop/clunks, and my knee generally

7

giving out has occurred." (Doc. 68 at 4.)

Based upon the facts in this case, the court will permit Plaintiff to increase his damage request in the pending FTCA action to $20,000.00. We find that Plaintiff did not know the full extent of his injuries at the time he filed his administrative claim, and was not reasonably capable of discovering the new evidence or intervening facts at that time. It is also worth noting that Defendant did not oppose Plaintiff's motion to increase the damages requested. The court will grant Plaintiff's motion for leave to file a supplemental brief to his original motion, however only to the extent that the court has considered the exhibits attached to his motion in deciding whether to allow him to increase his request. However, his request to further increase his request for damages to $50,000.00 will be denied. Plaintiff fails to satisfy his burden that any post-surgical evidence/intervening facts could not have been reasonably discovered and included by him in his motion to increase damages filed with the court on March 18, 2014.[4] In light of the foregoing, Plaintiff's pending motion with respect to the court's failure to rule on his motion to increase damages (Doc. 76) will be denied as moot.

**B.     Motion for leave to depose Kenneth Zook**

A formal scheduling order has not yet been issued in this matter. As such, the court will impose a discovery deadline to expire within sixty (60) days, and a deadline for the parties to file dispositive motions within thirty (30) days thereafter. With respect to discovery, Plaintiff has filed a motion seeking leaving to depose Kenneth Zook. (Doc. 58.)

---

[4] Plaintiff admits that post-surgery in March, 2013 he began to experience problems with his knee. (Doc. 68 at 4.)

Zook was one of the individual defendants named in the original complaint. The individual defendants have been terminated from the case, and the matter now proceeds as an FTCA claim only against the United States. Plaintiff seeks leave to conduct the deposition of Zook pursuant to Fed. R. Civ. P. 30(a)(2), in that his testimony is necessary to prepare an evidentiary report in support of his negligence claims of delayed medical treatment. He further requests that if his motion is granted, that all costs associated with the deposition be assumed by the government pursuant to 28 U.S.C. § 1915(c). To the extent he is required to pay his own costs, he requests that he be permitted to pay them in installments over time, as with his filing fee.

Defendant does not oppose Plaintiff's request to depose Zook with respect to his pending FTCA claims. However, Defendant opposes any request that the court or Defendant assist in scheduling or paying for the court reporter or deposition transcript. The court agrees.

Plaintiff is responsible for his own costs in prosecuting his case, including the costs of discovery and assembling the facts. Simply because Plaintiff is pro se and allegedly lacks financial resources, does not entitle him to conduct his discovery free of charge or to have his costs paid by the government. See Victor v. Lawler, 2010 WL 2326248, *3-*4 (M.D. Pa. June 2, 2010)(the law is well-settled that pro se litigant must pay for the expenses involved in their civil actions); Copelin v. Rothermel, Civil No. 09-2336 (M.D. Pa. Feb. 7, 2011). This is also true even though a Plaintiff is proceeding *in forma pauperis*.[5]

---

[5] Plaintiff's reliance on 28 U.S.C. § 1915(c) is misplaced. § 1915(c) permits the court to direct payment by the United States of the expenses of (1) printing the record on appeal in

In Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993), the Third Circuit stated that "[t]here is no provision for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."  See also Ballard v. Williams, No. 10-CV-1456, 2013 WL 5291109, *4 (M.D. Pa. 2013)(finding that indigent plaintiff is responsible for payment of own discovery expenses); Augustin v. New Century TRS Holding, Inc., No. 08-CV-326, 2008 WL 5114268 (W.D. Pa. 2008)(Court denied request of indigent litigant who was proceeding *in forma pauperis* to direct the U.S. Marshal to serve subpoenas since no federal law existed authorizing court to order the payment of federal monies for the necessary expenses of a civil suit filed by an indigent litigant); see also Hodge v. U.S., No. 06-CV-1622, 2009 WL 2843332, *4-*5 (M.D. Pa. 2009)(*in forma pauperis* Plaintiffs, including pro se inmates, are responsible for their litigation fees in civil actions); Tabron v. Grace, 6 F.3d at 159 (3d Cir. 1993)(court had no authority to pay for Plaintiff's deposition transcript); Wilkerson v. U.S., Civil No. 07-2228 (M.D. Pa. Apr. 20, 2009)(court denied *in forma pauperis* Plaintiff's motion for independent medical exam).  Thus, this court has no authority to have government monies used to pay for Plaintiff's expenses in prosecuting his case.  For these reasons, the pending motion will be

---

any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate judge in any civil or criminal case, if such transcript is required by the district court in cases proceeding under 28 U.S.C. §636(b) or 18 U.S.C. § 3401(b); and (3) printing the record on appeal if such printing is required by the appellate court in the the case of proceedings conducted pursuant to 28 U.S.C. § 636(c).  There is no authorization in § 1915(c) for the payment by the court or government of a Plaintiff's discovery expenses in a civil rights action.

10

granted only to the extent that Plaintiff is free to conduct the deposition of Kenneth Zook to the extent he has the financial ability to do so. Any arrangement with respect to the scheduling of the deposition and/or payment of the stenographer is Plaintiff's responsibility. Plaintiff's request for the court/government to pay his discovery-related costs or set up a payment plan is denied.

### C.     Motion for court to infer facts

Also pending is a motion wherein Plaintiff requests the court to infer certain facts in this case pursuant to Federal Rule of Evidence 301. As explained by the United States Court of Appeals for the Third Circuit:

> Under Rule 301 of the Federal Rules of Evidence, a presumption in a civil case imposes on "the party against whom [it] is directed ... the burden of producing evidence to rebut the presumption," but it "does not shift the burden of persuasion, which remains on the party who had it originally." Fed. R. Evid. 301. By introducing evidence to rebut a presumption, the introducing party "destroys that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue." Cappuccio v. Prime Capital Funding LLC, 649 F.3d 180, 189 (3d Cir. 2011)(internal quotation marks omitted).

Vazquez v. Caesar's Paradise Stream Resort, 524 F. App'x 831, 833 (3d Cir. 2013).

Under the federal rules, presumptions place upon the opposing party the burden of establishing the nonexistence of the presumed fact, once the party invoking the presumption establishes the basic fact. See Fed. R. Evid. 301. See generally Peoples Natural Gas Co. v. Ashland Oil, Inc., 604 F.Supp. 1517 (W.D. Pa. 1985). At this early stage of the proceedings, any such request lacks support and will be denied without prejudice.

### D.     Motions to Compel

Pending on the docket are two related motions to compel filed by Plaintiff. On June

11

2, 2014, he filed a motion to compel the Clerk of Court to issue a subpoena for his use in discovery. (Doc. 60.) He seeks to serve the subpoena on a non-party, Office of the Inspector General ("OIG"), to obtain a copy of a letter that he wrote and sent to said office on August 28, 2011. He wrote to the OIG requesting that they "watch over him" because he was about to report that his cell wall caved in and feared retaliation. (Doc 61 at 1.) He asserts that the OIG assigns a filing number to any document that comes in to their office. He seeks a copy of the letter from the OIG to demonstrate when and how Defendant became aware of the structural damage in his cell. He requests that the subpoena be issued "in camera" to preserve the evidence of Defendant's "deceit" with respect to when the structural damage was discovered. (Id. at 2.)

Prior to any ruling on the above motion, Plaintiff filed a motion requesting the court to compel the OIG to produce the above-referenced letter. (Doc. 73.) He claims that he submitted a document request to the OIG pursuant to the Freedom of Information Act on July 21, 2014, requesting a copy of his August 28, 2011 letter, and that they failed to respond thereto.

It is well settled that Fed. R. Civ. P. 26 establishes a fairly liberal discovery policy. The Federal Rules of Civil Procedure allow discovery on any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. See Fed. R. Civ. P. 26(b)(1). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-52 (1978); see also Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).

"Rulings regarding the proper scope of discovery, and the extent to which discovery may be

compelled, are matters consigned to the Court's discretion and judgment." McConnell v. Canadian Pacific Realty Co., 280 F.R.D. 188, 192 (M.D. Pa. 2011). It has long been held that decisions relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the Court. Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000)(explaining that a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible").

The Office of Inspector General is not a party to this action. Fed. R. Civ. P. 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying suit through the use of a subpoena. Fed. R. Civ. P. 45(b)(1) requires that if a subpoena is served on a non-party and requests the production of documents, notice must be served on each party before the subpoena is served. Subpoenas served in accordance with Fed. R. .Civ. P. 45 must fall within the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1). Rule 45 requires a court to quash or modify a subpoena in certain circumstances, and permits it to do so in other circumstances. See Fed. R. Civ. P. 45(c)(3)(B). A court's broad discretion in discovery also extends to decisions regarding whether to issue subpoenas to pro se litigants. Gay v. Petsock, 917 F.2d 768, 773 (3d Cir. 1990).

In this case, Plaintiff requested the issuance of a subpoena to obtain documents for the purposes discussed above. The Court agrees with Plaintiff that the document sought has relevance to his claims. As such, the Clerk of Court will be directed to issue a subpoena to Plaintiff for his use in discovery. The Clerk of Court will complete the caption and the civil action number on the blank subpoena form. Plaintiff must complete it and then serve it in accordance with Rule 45(b), and must file a certificate of service with the court for any subpoena served. If he fails to use the subpoena, he must return it to the Clerk of Court within ten (10) days after the termination of this lawsuit.[6]

---

[6] Plaintiff is advised that he will be responsible for any fees charged in attempting to obtain copies of the desired documents.

Any request by Plaintiff to have the subpoena issued "in camera" or to be "sealed" will be denied for the following reasons.  First, Fed. R. Civ. P. 45(a)(4) requires that before Plaintiff serve the subpoena on the person to whom it is directed, he must serve a copy of the notice and a copy of the subpoena on each party in the action.  Second, because Plaintiff has already set forth in the record the exact document he is seeking from the OIG and his purpose in obtaining the document, there exists no basis for his request.

Based on the foregoing, the court will deny without prejudice Plaintiff's subsequent motion to compel the OIG to produce the document requested.  It is unnecessary to do so at this juncture of the proceedings when there exist appropriate channels of discovery for obtaining the desired information.  An appropriate order follows.