# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| SCOTT NJOS, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. 3:12-1252 |
| v. | : | (JUDGE MANNION)[1] |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

## **MEMORANDUM**

## I. Background

Plaintiff, Scott Njos ("Njos"), an inmate formerly confined at the United States Penitentiary, Lewisburg ("USP-Lewisburg"), brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et. seq., for injuries he allegedly received on August 28, 2011. (Doc. 18). Plaintiff alleges that, while standing on a toilet in his USP-Lewisburg cell, cleaning the upper walls of his cell, the ventilation grate and surrounding bricks fell on him, causing him to fall from the toilet. The Plaintiff has exhausted his administrative remedies, and the court has jurisdiction under 28 U.S.C. §1346(b).

The Defendant, the United States of America, does not dispute that it

---

[1]This case was reassigned to the undersigned judge on July 7, 2017.

owed a duty to Njos to exercise reasonable care and diligence in maintaining his cell. However, they dispute Plaintiff's claim that the upper walls of his cell were damaged during an earthquake that occurred on August 23, 2011, Plaintiff's claim that he put correctional staff on notice of the damage, and, that Plaintiff fell as a result of the damage. On September 12, 2017 the Court conducted a non-jury trial. As a result of the trial and the evidence presented, pursuant to [Fed. R. Civ. P. 52(a)](), the Court makes the following findings of fact and conclusions of law based on a preponderance of the credible evidence.

**II. <u>Findings of Fact</u>**

On September 9, 2009, Petitioner was approved for a transfer from USP-Victorville to USP-Lewisburg based on the following rationale:

> Inmate Njos has demonstrated very poor institutional adjustment at USP-Victorville as indicated by the 11 incident reports referenced above. The assaults and threats involved inmate Njos spitting on staff while attempting to strike them with his fists and yelling to staff statements such as "I am going to kill me a staff member; I promise you." Inmate Njos attempted to escape from the SHU by cutting the bar of the cell window with a piece of hardened steel he removed from the shower drain. Inmate Njos also cut around the edge of the ventilation duct in an attempt to escape through the ventilation system. In addition, inmate Njos planned to ingest pills in an effort to be taken to the hospital. At the hospital, he wanted to surprise and over-power the officers, take their weapons and shoot them to effect his escape. Inmate Njos' disciplinary infractions are very disruptive to the security

2

and orderly running of this institution. Additionally, inmate Njos poses a serious threat to the safety and welfare of staff and inmates as evidence by these incident reports. Due to the very serious threat inmate Njos poses to the secure and orderly running of this institution and the safety of staff and other inmates, it has been determined he requires placement in a correctional environment which affords greater security and supervision. Accordingly, it is requested inmate Njos be approved for transfer to a Special Management Unit (SMU) to place him in a facility commensurate with his security and supervision requirements.

(Doc. 161-2, Ex. 13, Request for Transfer).

Between August 23, 2011 and August 28, 2011, Plaintiff, Scot Njos, was incarcerated at USP-Lewisburg, Pennsylvania in cell 324 on C-Block. On August 23, 2011, an earthquake occurred a few states away in Virginia, that rated 5.8 in magnitude. A conference call logged by the institution at 2:45 p.m. revealed that the institution "shook" from the earthquake in Virginia. There was no known damage to the institution and inmates remained locked-in. (Doc. 170, Lieutenant's Daily log). Plaintiff did not report any damage to his cell as a result of the earthquake, there are no work orders for repairs to Plaintiff's cell, nor was there damage to any other areas of the institution alleged to be related to the earthquake.

According to Plaintiff on August 28, 2011, he was cleaning his cell with a three inch green scrub pad and cleaning solution provided by the prison. (N.T. at 154-199). He was doing this because inmates cooking near the

grates in the cells below him caused soot and dust to rise up to Plaintiff's cell, coming out from the vent and staining his white walls. Id. In order to clean the wall around the grate, Plaintiff says he would stand on the toilet daily and clean the soot from this wall. Id. On August 28, 2011, while standing on the toilet, cleaning the wall, and talking with other inmates through the vent, Plaintiff allegedly slipped and fell off the toilet. Id. Contrary to Plaintiff's testimony the evidence presented showed that inmates are not required to stand on their toilets to clean ceiling or walls. (N.T. at 85). Inmates are not accountable for areas they cannot reach in their cell. Id. at 88.

Correctional Officer Romig was not working on August 23, 2011, (N.T. at 41), however he was working on August 26, 27 and 28, 2011. (N.T. at 42). Officer Romig has no recollection of the August 23, 2011 earthquake nor of Plaintiff informing him on August 28, 2011 that he was standing on the toilet, cleaning his cell, when he fell off the toilet and hurt himself. (N.T. at 39-48).

Correctional Officer Shirk was working on August 23 through August 28, 2011, but never felt the earthquake nor was he informed by Plaintiff of any damage in Plaintiff's cell. (N.T. at 59-85).

On August 28, 2011 at 9:30 pm, Plaintiff and his cellmate were moved from C Block, Cell 324, to B01-117 as a result of a hole in their cell. (Doc. 161-2, Ex. 9, Housing Unit Log, Evening Watch). At approximately 9:35 pm,

James Page, USP-Lewisburg Special Investigative Support Technician, acting on a radio communication from an unidentified range officer conducting a routine search, reported to C Block, Cell 324, to photograph wall cuts around the ventilation grate located on the cell wall. (N.T. at 96-128). Seven digital photos were taken of the cell wall, depicting the wall cuts. (Doc. 161-2, Ex. 12, Photos).

On August 29, 2011, Facility Manager Neuhard authorized a Facility Work Request for Maintenance Supervisor, Joseph Candelora, to "repair vent and 2 blocks in plumbing wall of cell C-324. (Doc. 161-2, Ex. 10, Facility Work Request). That same day, Mr. Candelora repaired the mortar surrounding the vent and two blocks, one above the vent and one below. Id.

Approximately one month later, on September 30, 2011, an administrative note entered into Plaintiff's medical file reveals the following:

> Duty paramedic reports that patient has been complaining for several days of knee pain. Patient has long history of complaints. Am not the assigned provider to cover this block while PCP is on A/L; however, will start NSAID and advise PCP discussion on his return.

(Doc. 161-2, Ex. 1, Medical Record at 70).

A further review of the medical records revealed that the first documented report of Plaintiff's alleged fall is during an October 21, 2011 Clinical Encounter, in which Plaintiff states that "back in August, he had a fall

in his cell while holding onto the ventilation grate in the wall" and "his back struck the rail of the bottom bunk and he felt that his knee was strained." (Doc. 161-2, Ex. 1, Medical Record at 65). Plaintiff further indicated that "initially the back hurt more, but has since mostly resolved", but that "his knee is not getting better" and "he has a sensation that something is shifting or getting ready to lock-up on the inside." Id. X-rays were ordered for Plaintiff's spine and knee, and an orthopedic consultation was requested. Id.

On October 27, 2011, an x-ray of Plaintiff's right knee yielded negative findings and conclusions, and Plaintiff was approved for a referral to an orthopedic specialist for lumbar strain and right knee pain. (Doc. 161-2, Ex. 1, Medical Record at 51-52).

On January 11, 2012, Plaintiff's post-consultation visit with the orthopedist resulted in the following findings:

> Patient was seen by contract orthopedist for right knee injury reported in August/Sept of 2011. Patient states he twisted it as he slipped off a toilet (was holding on to grate in cell - talking to neighbors/washing walls).
>
> Exam show stable ACL (negative lachman's), Rom from 0-130 flexion, no effusion., (+) pain at the medial joint line and pain with McMurray's maneuver.
>
> X-ray shows no bony abnormality.
>
> Plan - inject (R) knee. Continue Motrin. Re-check in 3 months.

(Doc. 161-2, Ex. 1, Medical Record at 85).

After hearing the testimony, the court finds that the Plaintiff's alleged fall from his toilet on August 28, 2011 was not caused by unrepaired damage to Plaintiff's cell wall from an August 23, 2011 Virginia earthquake. The damage to the ventilation grate and bricks in cell #324 were discovered on August 28, 2011 during a routine cell search. The damage to the ventilation grate and surrounding bricks appears to have been caused by the occupants of cell #324. The damage was, in fact, not consistent with cracks caused by an earthquake. Any fall that occurred was a result of Plaintiff choosing to stand on his toilet to clean his walls, and/or talk to inmates in other cells, while placing his hand on the ventilation grate and surrounding bricks, which he caused, or at the very least knew could be in a state of disrepair.

The Court finds that the Plaintiff has failed to establish by a preponderance of evidence that the source of his alleged injury was from the caving in of the ventilation grate and bricks in cell #324, as a result of the Virginia earthquake. There exists no testimonial or documentary evidence that Plaintiff's cell was damaged as a result of the earthquake, that the damage was reported to anyone and that Plaintiff fell off the toilet as a result of the damage.

Plaintiff's own negligence in assuming the risk of standing on the toilet in the first place, was the factual cause of the Plaintiff's injuries.

7

## III. Discussion

Plaintiff avers that his injuries were proximately caused by Defendant's negligence in the care and maintenance of the ventilation grate and wall bricks which Plaintiff claims to have been holding onto when he fell. The court concludes, however, that Plaintiff's injuries were not proximately caused by any negligence on the part of Defendant, but rather, if at all, by the negligence of the Plaintiff.

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. United States v. Sherwood, 312 U.S. 584, 586 (1941). Indeed, sovereign immunity is jurisdictional in nature. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act constitutes such a waiver of the United States' immunity from suit, effective only where certain conditions are present. Id. The Federal Tort Claims Act, 28 U.S.C. §1346(b) vests jurisdiction in the district courts over suits against the United States for damages for injury caused by the negligent act of any employee of the Government while acting within the scope of his employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred. F.D.I.C. v. Meyer at 477.

Importantly, the scope of such a claim, as provided under the Act, is no

greater than that which a plaintiff would enjoy in any ordinary negligence cause of action. "Thus, 'the extent of the United States' liability under the F.T.C.A. is generally determined by reference to state law.' " Molzof v. United States, 502 U.S. 301, 305 (1992). As the alleged wrong and the injury occurred in Pennsylvania, "the test in this case under the Federal Tort Claims Act is whether or not a private individual would be liable to the [P]laintiff under the law of [Pennsylvania]." Id.

Plaintiff has not presented any credible evidence that the ventilation grate and surrounding bricks were damaged in the earthquake and then not properly maintained. Although Plaintiff indicated in his testimony that he continually put Defendants on notice that the wall was in disrepair as a result of the earthquake, the Court does not find this allegation credible in light of the lack of evidentiary or testimonial evidence indicating or corroborating any notice of this problem.[2] Plaintiff testified to standing on the toilet for the past six years to clean the ventilation grate and surrounding wall. Certainly, to the extent that this action is a dangerous situation, Plaintiff assumed the risk. As such, the Court finds, by a preponderance of the evidence that Plaintiff's fall was the result of his own negligence. Plaintiff admitted during trial that he

---

[2]To the contrary, the Court notes that the very day Defendant was put on notice of a hole in Plaintiff's cell the occupants were removed from the cell, a work order was issued, and the wall was repaired.

9

was standing on the toilet not only to clean the wall, but also to talk with other inmates through the ventilation grate. As such, the Court finds it more reasonable to conclude that while engaging in such action, Plaintiff became distracted, slipped and fell.[3] Thus, Plaintiff has not proven by a preponderance of the evidence that his injuries were the result of any negligence on the part of the United States.

### IV. Conclusions of Law

Consistent with the above findings of fact and discussion, the Court makes the following conclusions of law. The Federal Tort Claims Act governs all claims against the United States for monetary damages, for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. 28 U.S.C. §2675(a). Further, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for . . . punitive damages." , 28 U.S.C. §2674. The FTCA "provides a

---

[3] While the above is the court's findings, it appears more than mere coincidence that this plaintiff has, in the past, been found to carve out building materials around a cell ventilation duct in an attempt to escape.

mechanism for bringing a state law tort action against the federal government in federal court" and "the extent of the United States' liability under the FTCA is generally determined by reference to state law." In re Orthopedic Boan Screw Product Liability Litigation, 264 F.3d 344, 362 (3d Cir. 2001)(quoting Molzof v. United States, 502 U.S. 301, 305 (1992)). As such, a federal district court in considering a FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. §1346(b).

Plaintiff bears the burden of demonstrating, by a preponderance of the evidence, that Defendant acted negligently either in its maintenance of the ventilation grate and surrounding bricks on which Plaintiff claims to have been injured, or in its failure to warn Plaintiff of an unsafe condition. Plaintiff bears the additional burden of demonstrating, by a preponderance of the evidence, that either (a) Defendant's alleged negligence in the maintenance of the ventilation grate and surrounding bricks was a proximate cause of Plaintiff's injuries or (b) Defendant's alleged negligence in failing to warn Plaintiff about the condition of the wall was a proximate cause of Plaintiff's injuries. Plaintiff has failed to prove by a preponderance of the evidence that Defendant acted negligently in its maintenance of the ventilation grate and surrounding bricks, on which Plaintiff alleges to have been injured or in its

11

failure to warn Plaintiff of an unsafe condition.

The Court finds, by a preponderance of the evidence, that the causal negligence of Plaintiff, which includes, standing on his toilet in cell #324 to clean his walls, and/or to talk to the inmate in another cell, while placing his hand on the ventilation grate and the wall surrounding the grate, when he allegedly caused or knew that the grate and wall could be in a state of disrepair, was greater than any negligence on the part of the United States, and, as such, Plaintiff's claims are entirely barred pursuant to the Pennsylvania Comparative Negligence Statute. 42 U.S.C. §7102.[4] Plaintiff is not entitled to relief. Judgment will be entered in favor of the Defendant and against the Plaintiff.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: July 18, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-1252-02.wpd

---

[4]Title 42 U.S.C. §7102, Comparative negligence reads as follows:

(A) General Rule. - - In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

12